IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NEXSTAR BROADCASTING GROUP, INC. and NEXSTAR BROADCASTING, INC., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:08-CV-0953-K |
| DUANE LAMMERS, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Motion for a Preliminary Injunction filed by Plaintiffs Nexstar Broadcasting Group, Inc. and Nexstar Broadcasting, Inc. ("Nexstar"). The Court **GRANTS in part and DENIES in part** the preliminary injunction. The Court **denies** any injunctive relief relating to the non-disclosure agreement. The Court **grants** the injunctive relief relating to the non-compete agreement, but as modified by the Court. The Court permits Mr. Lammers to remain in his current employment with Silver Point Capital L.P. ("Silver Point"), but enjoins Mr. Lammers for one (1) year from, directly or indirectly, working in, with, for, or otherwise as it relates to the following five (5) designated market areas ("DMAs") in which Nexstar and companies owned by Silver Point operate television broadcasting stations:

Shreveport, Louisiana; Evansville, Indiana; Fort Wayne, Indiana; Peoria-Bloomington Illinois; and Odessa-Midland, Texas.

## FACTUAL BACKGROUND

Nexstar, an investment group, owns and operates a television broadcasting company with a focus on television stations in medium-sized markets. Nexstar owns, operates, programs, or provides sales and other services to 50 television stations covering 29 markets or DMAs. Defendant Duane Lammers ("Mr. Lammers") worked for Nexstar as the Chief Operating Officer and an Executive Vice President until May 27, 2008. He left Nexstar for employment with Silver Point, which is also an investment management firm and owner of Granite Broadcasting Corporation ("Granite") and Communications Corporations of America ("CCA"). Both Granite and CCA are direct competitors of Nexstar in five specific DMAs.

While he was employed with Nexstar, Mr. Lammers held many responsibilities; most notably, according to Nexstar, was his role as lead negotiator in their cash retransmission compensation contracts ("CRC contracts"). These contracts, of which Nexstar was a pioneer in securing, require cable providers, phone companies, satellite companies, and all other Multichannel Video Service Providers to pay for the right to carry the signals of Nexstar's television stations. Many television broadcast companies have not successfully negotiated CRC contracts, and continue to provide these channels to the cable companies for free. Nexstar views its

ability to negotiate CRC contracts as an essential component of its success, with these CRC contracts amounting to $18.2 million of its revenues for 2007.

Mr. Lammers set Nexstar's strategy relating to the CRC contracts, both in initially securing them and then in renegotiating expiring CRC contracts. He negotiated approximately 50 group-wide contracts (for all or a substantial number of Nexstar's television stations) and approximately 100 contracts in Nexstar's individual markets. Nexstar considers the terms of the CRC contracts to be trade secrets because they involve proprietary negotiating strategy and specific calculation methods used to determine fees to be paid. This information is protected by confidentiality provisions in the CRC contracts.

In addition to protecting this information specifically in the CRC contracts, Nexstar required Mr. Lammers to sign an Executive Employment Agreement ("Employment Agreement") which contained a non-disclosure agreement. Mr. Lammers agreed he would not:

> disclose to others, use for Lammers' benefit, copy or make notes of any confidential knowledge or trade secrets or any other knowledge or information of or relating to the business, activities or facilities of the Company [Nexstar] or any of its affiliates which may come to Lammers' knowledge during Lammers' employment pursuant to this Agreement or thereafter. . . .

*See* Executive Employment Agreement, ¶ 7(c). Also in the Employment Agreement, Mr. Lammers agreed to a non-compete provision. For one year after his employment with Nexstar ended, Mr. Lammers would not:

> within any DMA [designated market area] . . . in which the Company [Nexstar] operates a television broadcast facility on the date of termination . . . whether directly or indirectly, with or without compensation, (x) enter into or engage in the business of television broadcasting, or (y) be employed by, act as a consultant to, act as a director of or own beneficially five percent (5%) or more of any class of equity or debt securities of any corporation or other commercial enterprise in the business of television broadcasting, or (z) solicit or do any business with respect to television broadcasting with any existing customers of the Company [Nexstar].

*See id.*, ¶ 7(a). Paragraph 7(e) explains that the "parties understand and agree that the remedies at law for breach of the covenants in this Paragraph 7 would be inadequate and that the Company [Nexstar] will be entitled to injunctive relief or such other equitable relief as a court may deem appropriate. . . ." *See id.*, ¶ 7(e). The nondisclosure and noncompete provisions of Lammers' employment contract form the basis of Nexstar's request for injunctive relief in this case.

In July 2007, Nexstar and Silver Point began merger negotiations, specifically addressing the merger of Granite and CCA into Nexstar. Mr. Lammers participated in these negotiations, overseeing the day-to-day negotiations and helping develop Nexstar's negotiation strategy. As part of the negotiation process, Nexstar agrees that it voluntarily revealed certain confidential information, including the content of all CRC contracts, and also revealed Mr. Lammers experience and knowledge relating to the CRC contracts. In addition, Nexstar explained the potential benefit to Silver Point of the "after acquired" clauses in Nexstar's CRC contracts. These clauses provide that stations which Nexstar later acquires will automatically become a party

to Nexstar's CRC contracts, thereby receiving the same cash retransmission compensation Nexstar's current stations receive.  As a result, Silver Point, Granite, and CCA could potentially realize $6 million more in revenue in the first year of the merger.   Because of the sensitive  nature of the information Nexstar revealed during the merger discussions, Nexstar and Silver Point entered into a confidentiality agreement.

In March 2008, the negotiations fell apart.  At some point thereafter, Silver Point hired Mr. Lammers, who submitted his formal resignation on April 28, 2008, effective May 27, 2008.

Nexstar filed suit in state court against Mr. Lammers for breach of contract related to the non-compete and non-disclosure agreements.  Nexstar filed an application for a temporary injunction ("TRO"), which was granted *ex parte* by the state district court.  Mr. Lammers subsequently removed the action to this Court where Nexstar filed an extension for the TRO.  The parties ultimately filed an agreed TRO with the Court, extending the TRO for an additional seven days, and then Nexstar filed this motion for preliminary injunction.  The Court held a hearing on this motion June 17, 2008, extending the TRO until June 27, 2008.

## PRELIMINARY INJUNCTION

Nexstar filed suit against Mr. Lammers for breach of the non-disclosure and non-compete covenants in his Employment Agreement.  Nexstar moves the Court to enjoin Mr. Lammers from (1) disclosing any information relating to Nexstar or its

affiliates which Mr. Lammers learned while working there in violation of ¶ 7(c), and (2) working as an employee of Silver Point or any of its subsidiaries, including but not limited to Granite and CCA, in violation of ¶ 7(a).  Nexstar seeks the injunctive relief to remain in place through the conclusion of the pending arbitration proceeding, as provided for in Mr. Lammers Employment Agreement.

## STANDARD OF REVIEW

A preliminary injunction is an equitable remedy granted in extraordinary cases if a movant establishes the following: (1) a substantial likelihood of success on the merits; (2) a substantial threat the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damages that the injunction might cause the non-moving party; and (4) that the injunction will not disserve the public interest.  *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998).  It is within the court's sound discretion as to granting or denying a preliminary injunction.  *Mississippi Power & Light Co. v. United Gas Pipe Lime Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

### Substantial Threat of Irreparable Injury

Nexstar must establish a substantial threat of irreparable injury if the injunction is not granted.  The Court concludes that Nexstar has met its burden relating to the breach of the non-compete agreement, but not as to the claim of breach of the non-disclosure agreement.  Nexstar admitted in its briefing and at the

hearing that the confidential and proprietary information it claims Mr. Lammers would inevitably divulge was already revealed to Silver Point by Nexstar itself during the merger negotiations. The Court can find no argument by Nexstar that Mr. Lammers possesses additional confidential information which was never revealed to Silver Point by Nexstar. The Court fails to understand how Nexstar could suffer any harm or injury in the event Mr. Lammers did reveal the exact same information to Silver Point during the course of his employment with them when Nexstar already divulged it. Nexstar has failed to met its burden on this element. Therefore, Nexstar fails to establish it is entitled to injunctive relief against Mr. Lammers for breach of the non-disclosure agreement.

As for the breach of the non-compete agreement, Nexstar and Granite and/or CCA, companies owned by Silver Point, directly compete with each other within five DMAs. The Court agrees that Nexstar could suffer irreparable injury should Mr. Lammers work, either directly or indirectly, within any of these five DMAs for Silver Point.

## Substantial Likelihood of Success on the Merits

To satisfy this element of substantial likelihood of success, Nexstar need not prove its case with absolute certainty. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1109 n. 11 (5th Cir. 1991) ("In a preliminary injunction context, the movant need not prove his case."). "A reasonable probability of success, not an overwhelming likelihood, is all that need be shown for preliminary injunctive relief." *Casarez v. Val*

*Verde County,* 957 F.Supp. 847, 858 (W.D.Tex.1997). Paragraph 7(a) states that Mr. Lammers is prohibited from, directly or indirectly, working within any DMA in which Nexstar operates a television broadcast facility for a competitor for one year. As was established in the briefing and at the hearing, Nexstar and Granite and/or CCA directly compete with each other in five DMAs, and Mr. Lammers is now employed by Silver Point which owns Granite and CCA. While his physical location might be in a DMA other than one in which Nexstar operates, as is the current set-up, it is highly possible that his work with Silver Point could relate to one of those five DMAs. If that occurred, Mr. Lammers would certainly violate the non-compete agreement. Nexstar has shown a substantial likelihood of success on the merits of its claim for breach of the non-compete agreement.

### Threatened Harm to Mr. Lammers

Nexstar argues the potential harm it could suffer far outweighs any harm to Mr. Lammers should the preliminary injunction be granted. The Court agrees in part with Nexstar. Any potential harm to Mr. Lammers would be minimal, if any, if the Court enforces the effect of the parties' agreed TRO in this preliminary injunction order. Mr. Lammers would still be permitted to earn an income, but would not be allowed to work on anything related to those five DMAs.

### Public Interest

Finally, a preliminary injunction in this case will not disserve the public interest. Ths injunctive relief will allow Mr. Lammers to work in the field where his

experiences lies, earn his living, but will give effect to Nexstar's employment agreement covenants as the parties agreed upon in their amended agreed TRO.

**CONCLUSION**

From a review of the evidence submitted and the arguments by the parties, the Court finds that Nexstar has met the requirements entitling it to a preliminary injunction related to the non-compete agreement as outlined by the Court regarding the 5 DMAs pending the conclusion of the current arbitration proceeding. All other injunctive relief is expressly denied.

**SO ORDERED.**

Signed June 27th, 2008.

*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE